UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> RESIDEO TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 6:22-cv-00069-ADA <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT RESIDEO TECHNOLOGIES, INC.'S RESPONSE TO ECOFACTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF <u>NO ANTICIPATION BY THE MIT SYSTEM</u> (DKT. 94)**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Statement of Issues to be Decided ......................................................................... 2

III. Response to Alleged "Statement of Undisputed Material Facts" ........................ 2

IV. Legal Standard ........................................................................................................ 4

V. Argument ................................................................................................................. 5
    A. Summary judgment should be denied because there is a genuine dispute on whether the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" (element [1.d]) can include "a wireless radio in a cell phone tower." ........................................................................... 5
    B. Summary judgment should also be denied because there is a genuine dispute on the sufficiency of evidence relating to whether the MIT System's server included the "wireless radio" of limitation [1.d] .......................... 9

VI. Conclusion ............................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AdvanceMe Inc. v. RapidPay, LLC*,
　509 F. Supp. 2d 593 (E.D. Tex. 2007) (Davis, J.) ..................................................................12

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ........................................................................................................5, 6, 10

*Matsushita Elc. Indus. Co. v. Zenith Radio*,
　475 U.S. 574 (1986) ....................................................................................................................5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
　530 U.S. 133 (2000) ...............................................................................................................5, 10

*Washburn v. Harvey*,
　504 F.3d 505 (5th Cir. 2007) ......................................................................................................5

## TABLE OF EXHIBITS

| No. | Short Name | Exhibit |
|---|---|---|
| **Ex. 1** | EcoFactor's Final Infringement Contentions | Claim Chart of Alleged Infringement of '890 patent, Exhibit 2 to EcoFactor's Final Infringement Contentions (Dec. 9, 2022) (highlighted) |
| **Ex. 2** | de la Iglesia Op. Rept. | Excerpts from Opening Report of Erik de la Iglesia (May 12, 2023) (highlighted) |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Complete Name |
|---|---|
| **Plaintiff or EcoFactor** | Plaintiff EcoFactor, Inc. |
| **Defendant or Resideo** | Defendant Resideo Technologies, Inc. |
| **'890 patent** | U.S. Patent No. 10,584,890 |
| **'890 Asserted Claims** | Claims 1-3, 5-6, 9-11, 14-15, and 17 of the '890 patent[1] |
| **Motion or Mot.** | EcoFactor's Motion for Partial Summary Judgment of No Anticipation by the MIT System, Dkt. 94 (Jul. 11, 2023) |
| **Element [1.d]** | The element of the '890 patent's claim 1 reciting: "a wireless radio compatible with a wireless radio frequency protocol and configured to communicate bi-directionally with a location-aware mobile device" |
| **Paradiso Rpt.** | Opening Expert Report. of Dr. Joseph Paradiso Regarding Invalidity of U.S. Patent No. 10,584,890, Dkt. 90, Ex. E (May 12, 2023) |
| **Paradiso Tr.** | Transcript of Dr. Joseph Paradiso's Deposition, Dkt. 90, Ex. H (Jul. 6, 2023) |
| **Larson Rpt.** | Expert Report of Kent Larson Regarding the MIT System, Dkt. 90, Ex. N (Apr. 20, 2023) |
| **Larson Tr.** | Transcript of Mr. Kent Larson's Deposition, Dkt. 90, Ex. G (Apr. 29, 2023) |

*All emphasis herein is added unless otherwise noted.
**As indicated in the table above, certain Exhibits cited herein are attached to the declaration filed at Dkt. 90.

---

[1] This identifies the subset of claims analyzed by EcoFactor's technical expert on issues relating to alleged infringement. EcoFactor's Final Infringement Contentions (Dec. 9, 2022) alleged infringement of additional claims, but those are not identified here. Resideo reserves the right to address those additional claims to the extent EcoFactor later raises them.

**I.  INTRODUCTION**

EcoFactor knows it has an invalidity problem. The present Motion is one of *four* different EcoFactor motions all desperately trying to wound Resideo's strong invalidity defenses before they get to a jury. The present Motion seeks summary judgment of no invalidity with respect to Resideo's *lead invalidity ground*, which is based on a prior art thermostat system developed at the Massachusetts Institute of Technology (MIT) Media Lab ("the MIT System"). Resideo looks forward to presenting this invalidity theory at trial.

Because EcoFactor understandably fears this theory, the present Motion (along with EcoFactor's related Motion to Exclude the Opinions of Dr. Joseph Paradiso (Dkt. 93)[2]) relies on mischaracterizations and distortions of the opening and deposition testimony from Resideo's technical expert, Dr. Joseph Paradiso. Despite EcoFactor's attempt to muddy the waters, however, the record is clear. As explained below, Dr. Paradiso's opening report identified two examples in the MIT System of "wireless radios" that disclosed element [1.d]. *First*, Dr. Paradiso opined that the MIT System included wireless radios in cell phone towers. *Second*, Dr. Paradiso opined that the MIT System included a broadband wireless radio in the MIT System's server. *Both* of these examples were based on express disclosure found in a thesis document that corroborates the operation of the MIT System. And these opinions demonstrate that there are at least two genuine disputes of material fact regarding whether the MIT System discloses element [1.d]. EcoFactor's

---

[2] EcoFactor's Motion to Exclude Expert Opinions of Dr. Joseph Paradiso, Dkt. 93 (Jul. 11, 2023) and EcoFactor's Motion for Partial Summary Judgment of No Anticipation by the MIT System, Dkt. 94 (Jul. 11, 2023) are related. The former seeks to exclude the opinions of Resideo's technical expert relating to how the MIT System discloses claim element [1.d], and the latter seeks summary judgment of no invalidity based on a theory that the MIT System does not disclose claim element [1.d]. For the reasons discussed in Resideo's Response to Dkt. 93, the Court should not exclude Dr. Paradiso's opinion that the MIT System's server included a broadband wireless radio was based on express disclosure. To the extent the Court agrees and denies Dkt. 93, that would present an additional basis for the Court to deny Dkt. 94 (as explained in Section V.B of this Response).

1

Motion should be denied.

**II.    STATEMENT OF ISSUES TO BE DECIDED**

Whether Resideo's evidence regarding the MIT System's cell phone towers and server broadband wireless radio raises genuine disputes of material fact that the MIT System discloses the "wireless radio" in element [1.d].

**III.   RESPONSE TO ALLEGED "STATEMENT OF UNDISPUTED MATERIAL FACTS"**

Here, Resideo provides a summary of relevant facts and then identifies certain disputes with Section II of EcoFactor's Motion.

The MIT System was a prior art GPS-controlled thermostat system. *See* Paradiso Rpt. at ¶ 111. Part of this system is conceptually illustrated below:

**Paradiso Rpt. at ¶ 176 (excerpt from MIT Thesis)**



Figure 9. GPS-Controlled thermostat system: design of functional prototype used for pilot testing.

The MIT System used GPS data from a mobile phone (*i.e.*, a Motorola 9Qh device) to determine when the user began traveling home and accordingly adjust the setpoint of a thermostat (*i.e.*, an RCS TR40 device). *See id.* at ¶¶ 111-12. This prior art system was constructed as part of a thesis paper authored by Mr. Manu Gupta and supervised by Mr. Kent Larson. *See id.* at ¶¶ 113-14; Dkt. 90, Larson Rpt. at ¶¶ 21-23. Mr. Larson is expected to provide expert testimony at trial regarding public availability and use of the MIT System. *See* Larson Rpt. at ¶¶ 17-32. He is also expected to

provide factual testimony at trial regarding content and operation of the MIT System, which he personally supervised the construction of and observed in operation. *Id.* at ¶¶ 33-116.

Resideo's technical expert, Dr. Joseph Paradiso, opined that the '890 Asserted Claims are invalid based on the MIT System (among various theories of invalidity). *See* Paradiso Rpt. at ¶ 6. In forming these opinions, Dr. Paradiso relied on many pieces of evidence from public and non-public sources. First, Dr. Paradiso relied on Mr. Larson's testimony, including his factual testimony regarding the operation of the MIT System. *See id.* at ¶ 114. Second, Dr. Paradiso also relied on three documents—the thesis paper submission ("the MIT Thesis"), an article submission ("the MIT Article"), and a presentation ("the MIT Presentation")—to corroborate Mr. Larson's testimony and describe the operation of the MIT System as a whole. *See id.* at ¶¶ 113, 115-19. Third, Dr. Paradiso relied on user manuals for the RCS TR40 thermostat and Motorola 9Qh mobile phone that were used in the MIT System. *See id.* at ¶¶ 113, 120-22. Fourth, Dr. Paradiso relied on testimony from Michael Hoffman, a VP of Engineering from UEI (formerly RCS) regarding functionality in the RCS TR40 thermostat. *See id.* at ¶ 121. Fifth, Dr. Paradiso relied on his own personal knowledge about the MIT System from the time it was developed. *See id.* at ¶ 114.

Of relevance here, Dr. Paradiso's report analyzed how the MIT system disclosed and/or rendered obvious each element of the '890 Asserted Claims, including element [1.d] ("a wireless radio compatible with a wireless radio frequency protocol and configured to communicate bi-directionally with a location-aware mobile device"). *See id.* at ¶¶ 174-79. For this element, part of Dr. Paradiso's analysis included a discussion of relevant corroborating disclosure in the MIT Thesis. *See id.* As part of that analysis, Dr. Paradiso opined that the MIT System included at least two wireless radios that would meet element [1.d]. *First*, paragraphs 175-77 of Dr. Paradiso's opening report identified *express disclosure* in the MIT Thesis relating to use of a Motorola 9Qh

3

mobile phone. *See id.* at ¶¶ 175-77. Dr. Paradiso explained that he identified this express disclosure because it demonstrates that the MIT System included wireless radios in the cell phone towers that were used to communicate with the wireless radio in the Motorola 9Qh mobile phone. *See id.* *Second*, paragraph 175 of Dr. Paradiso's opening report identified *express disclosure* in the MIT Thesis relating to "a broadband wireless internet connection from Verizon." *See id.* at ¶ 175. When questioned about it at deposition, Dr. Paradiso explained that he identified this express disclosure because it demonstrates that there was a broadband wireless radio in the MIT System's server. *See* Paradiso Tr. at 51:20-53:19, 50:15-25 ("There are actually several radios involved in that process, too, because the MIT thesis does disclose a Verizon Wireless broadband connection to the laptop [server] . . . . It's all part of the system that—there's wireless connections there, for sure.").

This factual background demonstrates that EcoFactor's Motion is *wrong* at least when it alleges (1) that "Dr. Paradiso does not argue in his report that the 'server' in the MIT System contains the claimed wireless radio" and "[h]e does not articulate a mapping for the claimed "wireless radio" until paragraph 177"; (2) that "Dr. Paradiso accuses the wireless radio in the location-aware mobile device of satisfying the claimed 'wireless radio'"; (3) that Dr. Paradiso "agree[d] that a POSITA would not have understood a 'thermostat system' to include a cell phone tower"; (4) that "Dr. Paradiso did not argue that the thermostat system includes a cell phone tower"; and (5) that "Dr. Paradiso admitted that the type of Internet connection for the laptop is not expressly or inherently disclosed in the MIT System reference—and indeed, Dr. Paradiso admitted that he does not know whether it was using a wireless connection or a wired connection." *See* Mot. at 2-3 (citations omitted); *see also* Mot. at 9 (incorrectly stating that "[i]n his report, Dr. Paradiso did not even accuse the MIT server laptop of including a wireless radio of any kind . . . .").

IV.   **LEGAL STANDARD**

Summary judgment must be rendered when the pleadings, the discovery and disclosure

4

materials on file, and any affidavit show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, a court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elc. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). A court also "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

V. **ARGUMENT**

    A. **Summary judgment should be denied because there is a genuine dispute on whether the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" (element [1.d]) can include "a wireless radio in a cell phone tower."**

There is a dispute over the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" (element [1.d]). EcoFactor and its technical expert (Dr. John Palmer) appear to contend that this claim language ***cannot*** include "a wireless radio in a cell phone tower." *See, e.g.*, Mot. at 6 ("Moreover, EcoFactor's rebuttal expert, Dr. John Palmer, will testify that the plain meaning of 'thermostat system' in the context of the MIT System does not include a cell phone tower."). As explained below, however, Resideo and its technical expert (Dr. Joseph Paradiso) advance the opposite position. They contend that the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" ***can*** include "a wireless radio in a cell phone tower." And Resideo's position is consistent with EcoFactor's prior interpretations of the claim scope.

The parties' dispute is genuine. A dispute is genuine if "a reasonable jury could return a

verdict in favor of" Resideo. *Anderson*, 477 U.S. at 248. Here, the record contains ample evidence supporting Resideo's position that the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" (element [1.d]). To begin with, the '890 patent's Figure 2 "shows a high-level illustration of the architecture of a network showing the relationship between the major elements of *one embodiment of the subject invention*." '890 patent at 5:23-25; *see also id.* at 8:16-19. This figure is reproduced below:

**'890 patent at Fig. 2 (highlighted)**



FIG. 2

EcoFactor and its claim construction expert specifically identified Figure 2's "broader overall system" as illustrative of Claim 1's "thermostat system." *See* EcoFactor's Resp. Cl. Constr. Br., Dkt. 30 at 9-11 (Aug. 19, 2022); *id.*, Dkt. 30-6 (Expert Decl. of R. Zeidman) ("Figure 2, for example, provides a higher-level illustration of *a system in accordance with the claimed invention* . . . ."). And one of the illustrated elements of the "thermostat system" is "cellular radio tower[] 120," which can "receive wireless signals in communication with mobile devices 105." '890 patent at 8:34-36. Because a "reasonable jury" could rely on at least this evidence to find that that the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" *can* include "a wireless radio in a cell phone tower," the parties have a genuine dispute on this issue.

EcoFactor does not appear to disagree that the MIT System's server communicated with a mobile phone using a cell phone tower. Instead, EcoFactor insists that the claimed "thermostat system" and "wireless radio" of element [1.d] cannot include "a wireless radio in a cell phone tower"—and EcoFactor contends that it "has ***never*** asserted [an] interpretation" to the contrary. Mot. at 6. But that is not true. EcoFactor's Final Infringement Contentions specifically identified a "cellular network" as within the scope of element [1.d]. *See* Ex. 1 (EcoFactor's Final Infringement Contentions) at 40-41 (alleging that element [1.d] was met based in part on "bidirectional communications between the wireless radio(s) in the thermostat system and the location-aware mobile device [that] may be routed through . . . networks (e.g., ***cellular network***, WiFi network, the Internet).")."). Moreover, EcoFactor's technical expert, Mr. Erik de la Iglesia, analyzed alleged infringement of element [1.d] and relied in part on "the server receiving radio frequency signals over a ***cellular network*** from the mobile device" and on "***cellular*** networking protocols." *See* Ex. 2 (de la Iglesia Op. Rept.) at ¶ 310. Though it may wish to believe otherwise, EcoFactor most certainly *has* interpreted the "wireless radio" of element [1.d] to include "a wireless radio in a cell phone tower." Mot. at 6.

EcoFactor also suggests that there is no genuine dispute by mischaracterizing the opinions of Dr. Paradiso. EcoFactor incorrectly suggests that Dr. Paradiso opined that the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio" cannot include "a wireless radio in a cell phone tower" because paragraphs 48-50 of Dr. Paradiso's opening report do not mention "cell phone tower." *See* Mot. at 3 (citing Paradiso Tr. at 36:9-37:11, 41:25-42:2; Paradiso Rpt. at ¶¶ 48-50); *id.* at 6. But paragraphs 48-50 were a discussion of "general background concepts" relating to "***thermostats***"—in fact, that's the *title* of the section. *See* Paradiso Rpt. at ¶¶ 48-50; *see also* Paradiso Tr. at 42:3-10 ("Q So it's those paragraphs together, that's where you're explaining

7

the plain and ordinary meaning of a thermostat system to a [POSITA]; is that right? . . . . [A]: *I think I say what a basic thermostat is* in the first sentence pretty much, and then I elaborate on it as I go."). The Court has construed a "thermostat" to be just one component of a "thermostat system," which is "a system that has function of a thermostat" in it. *See* Paradiso Tr. at 37:5-7; *see also* '890 patent at Fig. 2; Claim Construction Order, Dkt. 43 at 2 (Oct. 11, 2022) (declining to construe "thermostat system" as just "a thermostat"). Nowhere in EcoFactor's cited deposition testimony did Dr. Paradiso suggest that paragraphs 48-50 were intended to identify every component that could be part of a "thermostat system." *See* Paradiso Tr. at 36:9-37:11, 41:25-42:2.

EcoFactor also incorrectly contends that because Dr. Paradiso did not identify a "cell phone tower" as part of his analysis of element [1.pre], he must not have believed that a "cell phone tower" was part of the MIT System's "thermostat system." *See* Mot. at 1-2, 3 (citing Paradiso Rpt. ¶ 156); *id.* at 6 (citing Paradiso Rpt. at ¶¶ 152-58). In his analysis of element [1.pre], however, Dr. Paradiso stated that "[t]he MIT System included *at least*" the components in paragraph 156, which plainly implies that the MIT System included *more* than just those components. For element [1.d], Dr. Paradiso *did* identify a "cell phone tower" as part of the MIT System (as EcoFactor itself acknowledges). *See* Mot. at 6 (citing Paradiso Rpt. ¶ 177; Paradiso Tr. at 51:15-19). Indeed, Dr. Paradiso made clear that his "definition of the MIT System" included any "devices" that were "used in the experiments" (*see* Paradiso Rpt. at ¶ 113),[3] which would have included cell phone towers. *See, e.g.*, Larson Tr. at 60:1-7 ("Our thermostat is the TR40 plus the laptop and that does receive GPS coordinates sent wirelessly from the mobile phone."). EcoFactor's myopic view of

---

[3] It was appropriate for Dr. Paradiso to identify components in the MIT System's "thermostat system" because Dr. Paradiso was tasked with analyzing invalidity of the '890 patent's claim 1. Mr. Larson, in contrast, did not analyze invalidity. Thus, it is irrelevant that "Mr. Larson—whom Dr. Paradiso relies upon with respect to the MIT System—does not identify a cell phone tower as part of the MIT System." *See* Mot. at 6.

Dr. Paradiso's analysis for element [1.pre] intentionally ignores opinions that are elsewhere in Dr. Paradiso's opening report.[4]

Contrary to what EcoFactor says, therefore, the parties' experts *do not* agree on the plain and ordinary meaning of claim 1's "thermostat system" and "wireless radio." *See* Mot. at 6-7. The parties have a genuine dispute over whether that plain and ordinary meaning can include "a wireless radio in a cell phone tower." And that dispute is undoubtedly material: the entire premise of EcoFactor's Motion is that Resideo cannot show that the MIT System discloses element [1.d]. *See* Mot. at 1 (incorrectly arguing that "Dr. Paradiso failed to show" that the MIT System discloses "claim element 1[d]"). The Court should therefore decline to grant summary judgment.

**B.  Summary judgment should also be denied because there is a genuine dispute on the sufficiency of evidence relating to whether the MIT System's server included the "wireless radio" of limitation [1.d].**

EcoFactor's Motion wrongly contends that "[d]uring his deposition, Dr. Paradiso disclosed new, speculatory opinions on the 'wireless radio' claim element that are outside the scope of his expert report." Mot. at 8. For the reasons explained in Resideo's Response to EcoFactor's Motion to Exclude Dr. Paradiso's Opinions (Dkt. 93) and earlier in Section III, Dr. Paradiso's opinion that there was a broadband wireless radio in the MIT System's server should not be excluded. That opinion was disclosed in his opening report and relied on *express disclosure* in the MIT Thesis, which Dr. Paradiso was asked to further explain during his deposition. And if the Court agrees with Resideo and denies EcoFactor's Motion to Exclude Dr. Paradiso's Opinions (Dkt. 93), then

---

[4] EcoFactor additionally relies on paragraph 164 of Dr. Paradiso's Opening Report to argue that Dr. Paradiso's opinions about a "cell phone tower" "fail[] as a matter of law, because a cell phone tower does not anticipate a thermostat system that includes a wireless radio." Mot. at 6. But EcoFactor's argument is conclusory, and paragraph 164 discusses wiring of the MIT System's TR40 thermostat, so it is unclear what point EcoFactor intended to make. If EcoFactor clarifies its argument in a reply, Resideo reserves the right to file a sur-reply.

9

there is an additional dispute on whether the MIT System's server included the "wireless radio" of limitation [1.d]. That is an additional, independent basis to deny the present Motion.

The dispute over whether the MIT System's server included the "wireless radio" of limitation [1.d] is genuine. Again, a dispute is genuine if "a reasonable jury could return a verdict in favor of" Resideo. *Anderson*, 477 U.S. at 248. Here, the record contains significant evidence supporting Resideo's position that the MIT System's server broadband wireless radio discloses the "wireless radio" in element [1.d]. As explained in Section III, Dr. Paradiso's opening report identified *express disclosure* in the MIT Thesis relating to "a broadband wireless internet connection from Verizon." *See* Paradiso Rpt. at ¶ 175. When questioned about it at deposition, Dr. Paradiso explained that he identified this express disclosure because it demonstrates that there was a broadband wireless radio in the MIT System's server.[5] *See* Paradiso Tr. at 51:20-53:19, 50:15-25. Contrary to what EcoFactor insists, therefore, there *is* "express . . . disclosure in the MIT System" for a radio "in the laptop server."[6] Mot. at 8. This raises a genuine dispute.

EcoFactor's remaining arguments are no more than an undisguised effort to litigate the merits of Resideo's invalidity case on summary judgment. *See* Mot. at 8-11. This is clearest when, after discussing Dr. Paradiso's testimony and opinions, EcoFactor concludes: "That is not clear and convincing evidence of invalidity." Mot. at 10. Though EcoFactor may mistakenly believe this, it is irrelevant at this stage because a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment." *Reeves*, 530 U.S. at 150. Even if the Court were to weigh the evidence cited by EcoFactor (which it shouldn't), that evidence does not

---

[5] For the reasons explained in Resideo's Response to EcoFactor's Motion to Exclude Dr. Paradiso's Opinions (Dkt. 93), Resideo does not intend to elicit trial testimony from Dr. Paradiso regarding a Bluetooth wireless radio in the MIT System's server.

[6] For this reason, the Court should disregard EcoFactor's arguments regarding inherency. They are irrelevant because Dr. Paradiso relied on express disclosure in the MIT Thesis.

10

demonstrate the absence of a genuine dispute.

*First*, EcoFactor contends that "Dr. Paradiso points to no express disclosure in the MIT System of a wireless radio" because he opined that a "POSITA would assume, if you see 'wirelessly connected,' there's a radio." Mot. at 8-9 (citing Paradiso Tr. at 57:9-10). In this cited testimony, Dr. Paradiso was discussing his own narrative in paragraph 175; not the express disclosure of the MIT Thesis. Moreover, EcoFactor repeatedly tries to capitalize on Dr. Paradiso's use of the words "assume" and "assumption." Mot. at 9-11. But these are just word games. The context of Dr. Paradiso's testimony reveals that he was using the words "assume" and "assumption" to mean the same thing as "understand" and "understanding."

*Second*, EcoFactor argues that Dr. Paradiso "admits that in "the figure of the laptop" he relies upon "**you don't see an Internet connection**." Mot. at 9 (citing Paradiso Tr. at 64:13-65:13); *see also id.* at 10 (citing 73:24-75:16). In this cited testimony, however, Dr. Paradiso was specifically discussing one of the MIT Thesis's pictures of the MIT System. *See* Paradiso Tr. at 67:15 ("If I look at *the picture* . . . ."), 75:7-8 ("Beyond this indication that I see in *the picture* . . . ."). Dr. Paradiso was simply explaining the conclusions he could and could not draw from that picture alone. But that picture was just one piece of evidence Dr. Paradiso relied upon to form his opinion that the MIT System's server included a broadband wireless radio. He also relied on other evidence, including for example the MIT Thesis's disclosure of "a broadband wireless internet connection from Verizon." *See* Paradiso Tr. at 51:20-53:19.

*Third*, EcoFactor suggests Dr. Paradiso's opinions should be discounted because he did not perform a "tear down" of the MIT System's laptop to identify the specific radio components used therein, and instead he used the MIT Thesis's explicit disclosure to "assume[]" how the MIT System operated. Mot. at 9 (citing Paradiso Tr. at 76:22-78:9). But it is entirely permissible to rely

11

on public documentation to show the operation of a prior art system. *See, e.g.*, *AdvanceMe Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 620 (E.D. Tex. 2007) (Davis, J.) (after a bench trial, relying on "contemporaneous, non-confidential documentation that was available to the public" to show "[a]ll relevant facts regarding the operation" of a prior art system).

*Fourth*, EcoFactor mischaracterizes Dr. Paradiso's testimony to suggest that he "confirmed in deposition that the MIT Thesis does not expressly disclose that there was a wireless radio in the MIT System's server laptop or otherwise." Mot. at 9 (citing at Paradiso Tr. at 76:6-19). Dr. Paradiso did *no such thing*. In the cited testimony, Dr. Paradiso merely explained that the MIT Thesis did not identify the specific *hardware* used for "a broadband wireless internet connection from Verizon":

> Q Now, he—in writing the MIT thesis, he doesn't spell out in any more detail in this section that you reproduced here, he doesn't actually spell out the broadband wireless internet connection from Verizon what *hardware* that refers to; is that correct?
>
> THE WITNESS: In this section, this is all it says. And the rest of the thesis, there very well could be more detail. But sitting here looking at the report in this paragraph, this is the only mention of it. Right here in this paragraph. I mean, very well it could be more in the thesis.

Paradiso Tr. at 76:6-19 (objections omitted). EcoFactor similarly mischaracterizes other testimony from Dr. Paradiso as "admitt[ing] that the photographs and text describing the MIT System do not say whether the laptop used a wired connection or a wireless connection." Mot. at 10 (citing Paradiso Tr. at 55:8-16, 65:20-66:7, 67:10-20, 76:6-17). The cited testimony does not say that, and Dr. Paradiso confirmed that he was "[w]ithout a doubt" that the MIT System's server had a broadband wireless radio that would allow that server to maintain a "wireless connection to the internet." Paradiso Tr. at 52:17-19; *see also* 67:10-20 ("But just reading [the MIT Thesis] . . . *it's telling me that it had a wireless connection*. And again, as a POSITA, that's what you would do.").

*Fifth*, EcoFactor's Motion repeatedly relies on self-serving opinions and testimony from

12

its own expert (Dr. John Palmer). For the reasons detailed herein, Resideo vehemently disagrees with EcoFactor's conclusory statement that "Dr. Paradiso's report contains no contrary opinions" to Dr. Palmer. Mot. at 11. There is absolutely a genuine dispute between the parties' experts on many issues, including whether the MIT System discloses the "wireless radio" in element [1.d].

Thus, the parties have a genuine dispute over whether the MIT System's server broadband wireless radio discloses the "wireless radio" in element [1.d]. And again, that dispute is undoubtedly material because the entire premise of EcoFactor's Motion is that Resideo cannot show that the MIT System discloses element [1.d]. *See* Mot. at 1. The Court should therefore decline to grant summary judgment.

## VI. CONCLUSION

For the reasons above, Resideo respectfully requests denial of the Motion.

Dated: July 25, 2023                Respectfully submitted,

*/s/ S. Benjamin Pleune*
S. Benjamin Pleune
M. Scott Stevens
Stephen R. Lareau
J. Ravindra Fernando
Matthew M. Turk
**ALSTON & BIRD LLP**
Vantage South End
1120 S Tryon St # 300
Charlotte, NC 28203
Telephone: 704-444-1000
ben.pleune@alston.com
scott.stevens@alston.com
stephen.lareau@alston.com
ravi.fernando@alston.com
matthew.turk@alston.com

Ted Stevenson
Brady Cox
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Telephone:  214-922-3400
ted.stevenson@alston.com
brady.cox@alston.com

Deron Dacus
**THE DACUS FIRM, P.C.**
821 ESE Loop 323
Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
ddacus@dacusfirm.com

*Attorneys for Defendant*
*Resideo Technologies, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that counsel of record who are deemed to have consented to electronic service are being served on July 25, 2023, with a copy of this document via the Court's CM/ECF.

                                       */s/ J. Ravindra Fernando*
                                       J. Ravindra Fernando